1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 GEORGE E. JACOBS IV,                           )   Case No.: 1:08-cv-00369 AWI JLT
                                                 )
12                              Plaintiff,        )   FINDINGS AND RECOMMENDATIONS
            v.                                    )   DENYING DEFENDANTS' MOTION TO
13                                                )   DISMISS
                                                 )
14 WOODFORD, et al.,                              )   (Doc. 18)
                                                 )
15                              Defendants.        )
   _____      )
16

17         Plaintiff George E. Jacobs IV, ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma*

18 *pauperis* in this action civil rights action pursuant to 42 U.S.C. § 1983, which he initiated by filing

19 his complaint on March 14, 2008.  (Doc. 1).  On February 11, 2011, Defendants David, Masiel, and

20 Martinez (collectively, "Defendants") filed a motion to dismiss, arguing Plaintiff failed to exhaust

21 his administrative remedies prior to commencing this action, Plaintiff failed to state a claim against

22 defendant Masiel, and that Masiel is entitled to qualified immunity.  (Doc. 18).  Plaintiff filed his

23 opposition to the motion on April 4, 2011.  (Doc. 23).

24         The Court has read and considered the pleadings and arguments of the parties.  Local Rule

25 230(l).  For the reasons set forth below, the Court recommends Defendants' motion to dismiss be

26 **DENIED**.

27 ///

28 ///

1

1    **I.  Factual and Procedural History**

2          Following the Court's dismissal of Plaintiff's original complaint on January 14, 2010 (Doc.

3    6), Plaintiff filed his First Amended Complaint on February 16, 2010.  (Doc. 7).  In it Plaintiff

4    alleges that on July 24, 2007, while defendants David and Masiel escorted him across the SHU yard,

5    David "pushed Plaintiff in a violent manner" and made "verbal threats toward Plaintiff about what

6    he would do to Plaintiff if Plaintiff continued to pursue his lawsuit against J.M. Martinez, B. David's

7    supervisor." *Id.* at 7.  According to Plaintiff, once the escort was complete, Plaintiff placed his

8    hands through the food tray slot to have the handcuffs removed, and Masiel squeezed Plaintiff's

9    arms while making derogatory and offensive statements.  *Id.* at 7-8.  David removed Plaintiff's

10   handcuffs and "intentionally smashed the tray slot door on [his] right hand causing serious injury."

11   *Id.* at 8.  Plaintiff asserted that Defendant Martinez joined the others at the cell door and attempted to

12   spray him with pepper spray.  *Id.*  Martinez told Plaintiff that he was "lucky" that he had not been

13   involved in escorting him to his cell because he would have sprayed Plaintiff during the escort "for

14   suing him in Court."  *Id.*  Plaintiff stated Martinez denied the request for medical care for the injury

15   to his hand.  *Id.*

16         Given these allegations, on October 8, 2010, the Court found Plaintiff stated the following

17   cognizable claims: retaliation against David, Masiel and Martinez; excessive force against David and

18   Masiel; and deliberate indifference to a serious medical need against Martinez.  (Doc. 10).  However,

19   the Court determined Plaintiff failed to state a claim for the violation of his right to personal safety,

20   or to state claims against defendants Davis or the Warden of Corcoran State Prison.  *Id.* at 8-9.

21   Therefore, the Court instructed Plaintiff to file an amended complaint curing the deficiencies or to

22   notify the Court of his willingness to proceed on the cognizable claims identified by the Court.  *Id.* at

23   10-11.

24         Pursuant to the Court's order, Plaintiff notified the Court that he desired to proceed on the

25   cognizable claims on October 27, 2010.  (Doc. 12).  Therefore, the Court dismissed Davis and the

26   Warden and also dismissed Plaintiff's claim for a violation of his right to personal safety on

27   November 8, 2010.  (Doc. 14).  The Court ordered the remaining defendants to be served with the

28   Amended Complaint on November 19, 2010.  (Doc. 16).  On February 11, 2011, Defendants filed

2

1   the motion to dismiss now before the Court.  (Doc. 18).  Plaintiff filed his opposition on April 4,

2   2011 (Doc. 23), to which Defendants replied on April 7, 2011 (Doc. 25).

3   **II.   Motion to dismiss under the PLRA for failure to exhaust administrative remedies**

4       The Prison Litigation Reform Act ("PLRA") stipulates, "No action shall be brought with

5   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

6   confined in any jail, prison, or other correctional facility until such administrative remedies as are

7   available are exhausted."  42 U.S.C. § 1997e(a).  Therefore, prisoners are required to exhaust all

8   available administrative remedies prior to filing suit.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The

9   Supreme Court held that "the PLRA's exhaustion requirement applies to all inmate suits about

10  prison life, whether they involve general circumstances or particular episodes, and whether they

11  allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further,

12  the exhaustion of remedies is required, regardless of the relief sought by the prisoner, as long as the

13  administrative process can provide some sort of relief on the prisoner's complaint.  *Booth v.*

14  *Churner*, 532 U.S. 731, 741 (2001).

15      The California Department of Corrections and Rehabilitation ("CDCR") established an

16  administrative system for prisoner's grievances.  *See* Cal. Code Regs., tit. 15 § 3084, *et seq.*  To

17  properly exhaust the administrative remedies, a prisoner must comply with the deadlines and other

18  applicable procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

19      The exhaustion requirement of § 1997e(a) does not impose a pleading requirement, but rather

20  is an affirmative defense under which defendants have the burden of proving the plaintiff failed to

21  exhaust the available administrative remedies before filing a complaint in the District Court.  *Jones*

22  *v. Bock*, 549 U.S. 199, 216 (2007).  A motion raising a prisoner's failure to exhaust the

23  administrative remedies is properly asserted by way of an unenumerated motion under Fed.R.Civ.P

24  12(b).  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003); *Ritza v. Int'l Longshoremen's &*

25  *Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1998) (per curium).  In determining whether a

26  case should be dismissed for failure to exhaust the administrative remedies, "the court may look

27  beyond the pleadings and decide disputed issues of fact" in a procedure that is "closely analogous to

28

3

1   summary judgment." *Id.* at 1119-20.  When the court concludes the prisoner has not exhausted all of

2   his available administrative remedies, "the proper remedy is dismissal without prejudice." *Id.*

3        Defendants argue that Plaintiff failed to exhaust the available administrative remedies prior

4   to bringing this action.  (Doc. 18-1 at 2-4).  According to Defendants,

5        The only inmate appeal filed by Jacobs near [the date of the incidents] was from an
    extraction from his cell on July 30, 2007.  This appeal had to do with the fact that he was

6   given a property restriction for his rule violation which lasted thirty days.  His appeal was
    that he felt the restriction length was too long, but it is silent as to any alleged acts which

7   he alleged in the Complaint to have occurred on July 24, 2007.

8   *Id.* at 4.  In support, of their argument that Plaintiff failed to exhaust his administrative remedies,

9   Defendants present the declaration of D. Foston, Chief of the Inmate Appeals Branch ("IAB") for the

10  CDCR.  (Doc. 18-2).  According to Foston, "The IAB receives and maintains inmate appeals

11  accepted for Director's level review, and renders decisions on such appeals at the Director's level."

12  *Id.* at 1.  Records from the IAB indicate that between July 24, 2007 and March 18, 2008, Plaintiff

13  submitted five appeals for review at the Director's level, which were accepted on the following

14  dates: September 15, 2007; October 11, 2007; February 6, 2008; December 13, 2007; and January

15  30, 2008.  *Id.* at 2.

16       Plaintiff asserts his complaint is not barred under the PLRA based upon an exception to the

17  exhaustion rule.  (Doc. 23 at 5).  Plaintiff states under penalty of perjury, that he filed a 602 appeal

18  on July 29, 2007, which he sent via institutional prison mail-route to the Corcoran Appeals Office

19  for first level review.  *Id.* at 5-6.  Because the alleged misconduct was by correctional officers,

20  Plaintiff bypassed the informal level of review.  *Id.*, citing Cal. Code Regs., tit. 15 § 3084.5(a)(2)(G).

21  Plaintiff asserts he sent letters to the Warden and Appeals Coordinator regarding his appeal on

22  August, 30, 2007, after the thirty days in which a first level review was to be completed because he

23  had not received a response.  *Id.* at 5.  Also, Plaintiff sent letters "describing the problems and a copy

24  of the 602 appeal" and "seeking help and assistance in exhausting his administrative remedies" to

25  Director of Corrections, the Office of Internal Affairs, the Office of the Inspector General, and the

26  Department of Justice.  *Id.*  Plaintiff asserts the Office of Internal Affairs forwarded Plaintiff's appeal

27  to the Corcoran Appeals Office, where the 602 appeal was screened-out as untimely on January 17,

28  2008.  *Id.* at 7.

1    Plaintiff reports that at the time he made this 602 appeal, "there were major problems with

2    Corcoran's appeal process where many prisoners were having the same problems as Plaintiff,"

3    including suppression or misplacement of appeals.  (Doc. 23 at 7).  Plaintiff offers the declarations

4    by Devon E. McCoy, Charles Parks, and Larry Alexander, given under penalty of perjury,

5    concerning the "abrogation of prison administrative appeal/ grievance remedies, by staff losing

6    appeals and barring re-filing." (Doc. 23, Exh. E).  In addition, Plaintiff submitted a 602 appeal form

7    regarding the Appeal's Office failure to respond on January 7, 2008.  (Doc. 23 at 87, Exh. F).  Given

8    these facts, Plaintiff argues he "took various steps to exhaust his administrative remedies and made

9    every effort to make full use of the prison grievance process . . .  at Corcoran State Prison but was

10   stymied by prison officials intent on ignoring Plaintiff's grievance." (Doc. 23 at 8).

11   Failure to exhaust may be excused where inmate takes "reasonable and appropriate steps to

12   exhaust [a] claim," but is precluded from doing so by the mistake or misconduct of a prison official.

13   *Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010); *see also Ngo v. Woodford*, 539 F.3d

14   1108, 1110 (9th Cir. 2008) (suggesting a prisoner is excused from the exhaustion requirement when

15   "prison officials obstruct[] his attempts to exhaust" or "procedures for processing grievances weren't

16   followed by prison officials").  In *Nunez*, the plaintiff took various steps to exhaust the

17   administrative remedies, including filing both formal and informal appeals, and "made every effort

18   to make full use of the prison grievance process, but was stymied by the mistake." *Id.* at 1224, 1226.

19   Plaintiff argues the exception set forth in *Nunez* applies to his case, because he took steps to

20   exhaust his claim but was precluded from doing so.  (Doc. 23 at 8-9).  In their Reply, Defendants do

21   not address the exception, but assert, "There is no question that exhaustion of administrative

22   remedies is required:  the exhaustion requirement applies to all inmate suits about prison life, it is

23   mandatory, it is unequivocal, and a claim unexhausted at the commencement of an action may not be

24   considered." (Doc. 25 at 2, citing *Jones*, 549 U.S. at 211; *Porter*, 534 U.S. at 524; *Booth*, 532 U.S.

25   at 741.  To establish Plaintiff did not exhaust his administrative remedies, the Defendants offered the

26   declaration of T. Campbell, Appeals Coordinator at Corcoran, who stated, "There is no record that

27   Jacobs submitted any appeal regarding the July 24, 2007 incident, besides the one appeal which was

28

5

1   received and screen out as untimely, on January 17, 2008."  (Doc. 25-1 at 2).  In addition, Campbell

2   attached a copy of Plaintiff's inmate appeals log.  (Doc. 25-1, Exh. B).

3          Though the inmate appeals log supports Defendants' assertion that Plaintiff failed to exhaust

4   his administrative remedies, the absence of an entry on the log also corroborates Plaintiff's version

5   of the events—that the form was not handled in a proper manner after he sent it through the prison's

6   mailing system to the Appeals Office.  *See Roberts v. Salano*, 2009 U.S. Dist. LEXIS 44438, at *7

7   (E.D. Cal. May 29, 2010) ("The absence of evidence that an appeal was officially filed at the

8   institutional level may indicate Plaintiff never filed the appeal, but it may also indicate the appeal

9   was discarded or ignored by staff, as Plaintiff contends.")  Moreover, Plaintiff offers evidence that he

10  attempted to comply with the administrative appeals process by timely submitting his 602 appeal

11  form through the prison mailing system.  In addition, to bolster Plaintiff's claim that 602 grievances

12  are not properly handled, he submits form declarations from inmates McCoy, "Alexander" and

13  Parks, who declare that the CDCR routinely loses inmate grievances that are submitted and who

14  have been the victims of this practice at Corcoran State Prison. (Doc. 23 at 81, 82, 83)

15         Consequently, Defendants have not carried their burden to demonstrate that Plaintiff's failure

16  to exhaust his administrative remedies should not fall under an exception.  *See Nunez*, 591 F.3d at

17  1224-25; *see also Bradley v. McVay*, 2008 U.S. Dist. LEXIS 12903, at *8 (E.D. Cal. Feb. 21, 2008)

18  ("In a situation such as this where plaintiff submitted evidence that he attempted to properly utilize

19  the appeals process but was prevented by defendants . . . [and where] the parties offer differing

20  versions of events based on competing declarations, the issue is one of witness credibility and the

21  Court cannot make that requisite assessment on a motion to dismiss").  Therefore, the motion to

22  dismiss for failure to exhaust the administrative remedies is recommended to be **DENIED**.

23  **III.   Motion to Dismiss for failure to state a claim**

24         Allegations of a complaint must be accepted as true when the Court considers a motion to

25  dismiss for failure to state a claim.  *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740

26  (1976).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

27  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct.

28

6

1937, 1949 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Supreme

Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.*  Further, a court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  On a motion to dismiss for failure to state a claim, "review is limited to the complaint," and a court may not consider extrinsic evidence.  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Defendants argue that Plaintiff failed to state claims for excessive force or retaliation against defendant Masiel.  (Doc. 18-1 at 4-6).  Further, Defendants argue Masiel is entitled to qualified immunity because "the determination that Masiel violated no constitutional right is sufficient to establish that he is entitled to qualified immunity and obviates the need for further inquiry."  *Id.* at 8.

A.   Second Cause of Action for Excessive force

When prison officials are accused of using excessive force, the inquiry is whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7, citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  Malicious and sadistic use of force by prison officials to cause harm always violates contemporary standards of decency.  *Id.* at 9; *see also Oliver v. Keller*, 298 F.3d 623, 628 (9th Cir. 2002) (excessive force standard examines *de minimis* uses of force, not *de minimus* injuries).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9.  In determining whether the force used was sufficient to demonstrate a constitutional violation, the Court may consider "the need for the application of force, the relationship between the

need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley*, 475 U.S. at 321; *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003).

Defendants argue, "The only allegations against Masiel are that he squeezed Jacobs' arm while he was being uncuffed.  There are no allegations that the pressure applied caused any injury to Jacobs.  The arms were merely secured while the cuffs were removed." (Doc. 18-1 at 6).  However, according to the First Amended Complaint, when "Plaintiff extended his arms backwards through the tray slot in order to be unhandcuffed, Guard J. Masiel began to squeeze Plaintiff's arms" while making derogatory and explicit comments toward Plaintiff, including, "Your mother should have killed you at birth" and "If I get a chance I'm going to kill your black ass, you piece of shit" (Doc. 7 at 9).  The incendiary remarks made to Plaintiff support an inference that he acted maliciously and sadistically for the purpose of causing harm.

Further, it is not necessary that Plaintiff suffer harm for a cause of action for excessive force to arise.  Recently, the Supreme Court addressed this issue in *Wilkins v. Gaddy*, 130 S.Ct., 1175 (2010), overruling a district court that "dismissed a prisoner's excessive force claim based entirely on its determination that his injuries were *de minimis*.  *Id.* at 1177.  In *Wilkins*, the Supreme Court reaffirmed its holding that "*the core judicial inquiry . . . was not whether a certain quantum of injury was sustained*, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 1178 (emphasis added) (internal quotations omitted).

On the other hand, when the Court considers that *Whitley* factors to determine whether Plaintiff suffered an constitutional injury, it appears that there was a plausible need for Masiel to hold Plaintiff's arms while David moved into place to remove the handcuffs.  The amount of force used by Masiel was in excess of that needed but was not enough to cause Plaintiff any physical injury.[1]  Thus, the need for the force and the amount used were not significantly disproportionate which indicates that Masiel tempered the amount of force that he used.  Thus, Masiel could plausibly

---

[1] Though Plaintiff alleges that he suffered "numerous cuts and gashes to the back of his right hand and a dislocated right thumb" (Doc. 7 at 8), these appear to have been caused by David when he smashed the tray slot door on Plaintiff's right hand.

have thought that the force he used was necessary. *Hudson*, 503 U.S. at 7. Moreover, it appears that this was the exact type of malevolent touch anticipated by the United States Supreme Court in *Hudson* and reiterated in *Wilkins* which does not give rise to a constitutional injury. *Hudson* at 9; *Wilkins* at 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.")

However, this does not end the Eighth Amendment inquiry. In addition to claims that Masiel used excessive force, Plaintiff alleges that Masiel was present when Defendant David subjected him to excessive force and that Masiel failed to intervene in this conduct. (Doc. 7 at 10-11) "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" in the violation imposed by someone else. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). A defendant may be held liable for failing to intervene when he had enough time to observe what was happening and to intervene in the conduct but failed to do so. *Lanier v. City of Fresno*, 2010 U.S. Dist. LEXIS 130459 * at 17 (E.D. Cal. Dec. 8, 2010).

Plaintiff's factual allegations support this claim. The First Amended Complaint alleges that while Defendant David *and* Defendant Masiel escorted Plaintiff, David grabbed Plaintiff by the collar and repeatedly pushed him across the SHU yard, even though Plaintiff was wearing mechanical restraints. (Doc. 7 at 7). While in Masiel's presence, Plaintiff alleges that David threatened him because Plaintiff had filed a lawsuit against Defendant Martinez, David's supervisor. *Id.* While Masiel was present, David dared Plaintiff to resist so that he could "'Fuck' Plaintiff 'up' with a reason." *Id.* David continued to push Plaintiff until the trio reached his cell. *Id.* At the cell, Plaintiff alleges that after David uncuffed Plaintiff's hands, he shut the tray slot door on Plaintiff's right hand which caused him injury.

The escort and the time at Plaintiff's cell during which David's conduct escalated– from grabbing, to pushing, to death threats, to inflicting actual physical injury–provided Masiel sufficient time to observe and understand the situation and to take steps to intervene. (Doc. 7 at 7) He did not do so but instead, may have exacerbated the situation by squeezing Plaintiff's arms and voicing death threats within David's presence. *Id.*

Defendants argue that Masiel had insufficient time to react to David's act in closing the tray slot door on Plaintiff's hand and, therefore, did not fail to intervene.  In essence, Defendants consider only the discrete act of David slamming the tray slot door on Plaintiff's hand without regard for the totality of the event starting with David grabbing Plaintiff by the collar and pushing him across the SHU yard.  They offer no legal authority that the singular act may be or must be considered in isolation and without regard for the events leading up to it, despite the allegations of clear escalation by David.

Therefore, the Court finds that the allegations are sufficient under Rule 8 to state a cause of action under the Eighth Amendment's prohibition against cruel and unusual punishment based upon Masiel's failure to intervene.  Therefore, Plaintiff has stated a cognizable claim against Masiel in the second cause of action and the motion to be dismissed on this ground is recommended to be **DENIED**.

B.   First Cause of Action for Retaliation

Prisoners have the First Amendment right to pursue civil rights litigation and file prison grievances.  *Rhodes v.  Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *see also Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("A prisoner inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").  The Ninth Circuit opined,

> Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such as actions violate the Constitution quite apart from any underlying misconduct they are designed to shield.

*Rhodes*, 408 F.3d at 567.  Thus, allegations of retaliation against a prisoner's exercise of these rights may support a claim under § 1983.  *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985); *see also Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (a prisoner may not be penalized for exercising the right of redress of grievance).

In the context of the violation of a prisoner's First Amendment rights, a "viable claim . . . entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

1    inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

2    legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.  An adverse action is one that "would

3    chill or silence a person of ordinary firmness from future First Amendment activities." *White v. Lee*,

4    227 F.3d 1214, 1228 (9th Cir. 2000), *quoting Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d

5    1283, 1300 (9th Cir. 1999).

6        Defendants assert, "Only Defendant David made the verbal threats during the escort

7    regarding the prior litigation against Sergeant Martinez. [Citation]  The Complaint is completely

8    void of any comments made by Defendant Masiel referring to any prior litigation."  (Doc. 18-1 at 6).

9    Therefore, Defendants argue Plaintiff failed to state a claim against Masiel for retaliation.  In the

10   Amended Complaint, Plaintiff asserts he was "threatened and assaulted by peace officers B. David

11   and J. Masiel out of retaliation for maintaining and initiating a civil law suit against their superior

12   officer and coworkers."  (Doc. 7 at 11).

13       However, as recited above Masiel participated in Plaintiff's escort across the SHU yard along

14   with Defendant David.  (Doc. 7 at 7).  During the escort, David grabbed Plaintiff by the collar and

15   pushed him repeatedly despite that Plaintiff was restrained.  *Id.*  Masiel was present when David

16   made threats to Plaintiff which was done explicitly because of Plaintiff's lawsuit against Martinez.

17   *Id.*  Masiel was present when David encouraged Plaintiff to resist David's action so that David could

18   "'Fuck' Plaintiff 'up'."  *Id*.  Likewise, at the cell, Plaintiff alleges that Defendant Masiel squeezed

19   Plaintiff's arms, made derogatory comments and threatened to kill Plaintiff.  *Id*.

20       Taken together, these allegations create a reasonable inference that Masiel condoned the

21   abuse inflicted by David and, just as David had done, took action and made comments in order to

22   dissuade Plaintiff from pursuing the lawsuit against Martinez.  These allegations are sufficient under

23   Rule 8.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (Though it requires more than conclusory

24   recitation of the elements of the tort, "Rule 8 does not require detailed factual allegations . . .")

25   Therefore, Plaintiff states a cognizable claim for retaliation against Masiel and the motion to be

26   dismissed on this ground is recommended to be **DENIED**.

27   ///

28   ///

11

1    C.   Motion to dismiss based upon qualified immunity

2         A government official is entitled to qualified immunity from civil damages unless his

3    conduct violates "clearly established statutory or constitutional rights of which a reasonable person

4    would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The threshold is whether the

5    facts alleged when taken in the light most favorable to the plaintiff, show the defendant violated a

6    constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If there is a constitutional violation,

7    "the next sequential step is to ask whether the right was clearly established." *Id.*  Finally, the right

8    must be so "clearly established" that "a reasonable official would understand that what he is doing

9    violates that right." *Id.* at 202; *see also McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000) ("The

10   test for qualified immunity is: (1) identification of the specific right being violated; (2) determination

11   of whether the right was so clearly established as to alert a reasonable officer to its constitutional

12   parameters; and (3) a determination of whether a reasonable officer would have believed that the

13   policy or decision in question was lawful").

14        Defendants argue that Masiel is entitled to qualified immunity because Plaintiff "does not

15   plead that Defendant Masiel violated a clearly established constitutional right." (Doc. 18-1 at 8).  In

16   asserting this position, they focus only on Masiel's failure to protect Plaintiff from Defendant

17   David's actions.  Defendants allege,

18        In this case, Jacobs does not plead that Defendant Masiel violated a clearly
          established constitutional right. Masiel has a clearly established duty to protect
19        Jacobs, but no evidence shows that Masiel in fact failed to protect him. According to
          the analytical pattern set forth in Saucier, the determination that Masiel violated no
20        constitutional right is sufficient to establish that he is entitled to qualified immunity
          and obviates the need for further inquiry. If the inquiry is made under the second part
21        of the test—whether a reasonable person in Masiel's position could have believed that
          his conduct was lawful—given the facts pled in the Complaint, the answer is yes.
22        Therefore, under either part of the Saucier test, Defendant Masiel is entitled to
          qualified immunity.
23

24   To the contrary, the complaint shows that Plaintiff has sufficiently alleged violations of the Eighth

25   Amendment and the First Amendment.  It is a clearly established violation of the Constitution when

26   an officer uses unlawful force in violation of the Eighth Amendment. *See Hudson*, 503 U.S. at 9.

27   Moreover, Defendants admit that Masiel had a clearly established duty to protect Plaintiff from the

28   unlawful force used by others.  Equally clear is the prohibition on officers taking retaliatory action

12

against a prisoner for having filed a civil complaint is a clearly established violation as well.

*Rhodes*, 408 F.3d at 567. Thus, Defendants' argument that "a reasonable person in Masiel's position could have believed that his conduct was lawful" (Doc. 18-1 at 8), is hollow.  Accordingly, defendant Masiel has not demonstrated that he is entitled to qualified immunity at this juncture and the motion to dismiss on this basis is recommended to be **DENIED**.

**V.  Findings and Recommendations**

Accordingly, **IT IS HEREBY RECOMMENDED**:

1.     That Defendants' unenumerated motion to dismiss for failure to exhaust administrative remedies be **DENIED**;

2.     That Defendants' motion to dismiss Count Two for failure state a claim based upon excessive force be **DENIED**;

3.     That Defendants' motion to dismiss Count One for failure state a claim based upon retaliation be **DENIED**;

4.     That Defendants' motion to dismiss based upon qualified immunity be **DENIED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 21 days after being served with these findings and recommendations, any party may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be filed and served within 14 days of the date of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 25, 2011**                                    **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE

13