1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

GEORGE E. JACOBS, IV,                          Case No. 1:08-cv-00369-AWI-JLT (PC)

12
                      Plaintiff,               **FINDINGS AND RECOMMENDATIONS
13                                              DENYING DEFENDANTS' MOTION
            v.                                  FOR SUMMARY JUDGMENT**
14
JEANNE WOODFORD, ET AL.,                        (Doc. 44).
15
                      Defendants.
16

17

18          Plaintiff George E. Jacobs IV, ("Plaintiff") is a state prisoner proceeding pro se and in

19  forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his initial

20  complaint in this matter on March 14, 2008. (Doc. 1).  After the Court's initial screening of the

21  complaint, Plaintiff was given an opportunity to amend the complaint.  Plaintiff's First Amended

22  Complaint ("FAC") is the operative pleading.  (Doc. 7, 9, 12).  Plaintiff's FAC alleges the

23  following causes of action: 1) Retaliation against Defendants David, Masiel, and Martinez; 2)

24  Excessive Force against David and Masiel; and 3) Deliberate Indifference to Medical Need

25  against Martinez. (Doc. 7).

26          Before the Court is Defendants' Motion for Summary Judgment.  (Doc. 44).  Plaintiff

27  filed his Opposition on July 2, 2012. (Doc. 50) and Defendants have replied.  (Doc. 52).  On July

28  11, 2012, Defendants served Plaintiff with notice, as required by Woods v. Carey (9th Cir. 2012)

1

1    684 F.3d 934.  Plaintiff responded to the notice, indicated that he believed his initial Opposition

2    was sufficient, and asked the Court to decide the matter based on the Opposition he filed on July

3    2, 2012.  (Doc. 54).

4            Defendants Reply concedes, for purposes of this motion alone, that Plaintiff has presented

5    sufficient evidence to establish a genuine issue of material fact with regard to Plaintiff's First and

6    Eighth Amendment claims for retaliation and excessive force against David, respectively.  (Doc.

7    52).  Given this concession, the Court limits its discussion to Plaintiff's Retaliation claims against

8    Masiel and Martinez, his excessive force claim against Masiel, and his deliberate indifference to

9    medical need claim against Martinez.  After reviewing the arguments and evidence presented by

10   both parties, it is recommended that Defendants' motion be **DENIED**.

11   **I.       SUMMARY JUDGMENT STANDARDS**

12          The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

13   order to see whether there is a genuine need for trial."  Matsuhita Elec. Indus. Co. Ltd. v. Zenith

14   Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

15   when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

16   as a matter of law."  Fed. R. Civ. P. 56(a). Summary judgment should be entered, "after adequate

17   time for discovery and upon motion, against a party who fails to make a showing sufficient to

18   establish the existence of an element essential to that party's case, and on which that party will

19   bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

20          A party moving for summary judgment "bears the initial responsibility of informing the

21   district court of the basis for its motion, and identifying those portions of the pleadings,

22   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

23   which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S.

24   at 323 (internal quotation marks omitted).  An issue of fact is genuine only if there is sufficient

25   evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it

26   "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc.,

27   477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir.

28   1987).

1    If the moving party meets its initial burden, the burden then shifts to the opposing party to

2    present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e);

3    Matsuhita, 475 U.S. at 586. An opposing party "must do more than simply show that there is

4    some metaphysical doubt as to the material facts." Id. at 587. The party is required to tender

5    evidence specific facts in the form of affidavits, and/or admissible discovery material, in support

6    of its contention that a factual dispute exits. Id. at 586 n.11; Fed. R. Civ. P. 56(c). In addition, the

7    opposing party is not required to establish a material issue of fact conclusively in its favor; it is

8    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

9    parties' differing versions of the truth at trial." T.W. Electrical Serv., Inc. v. Pacific Elec.

10   Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an

11   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

12   Celotex, 477 U.S. at 322.

13   **II.    FACTUAL BACKGROUND**

14   On July 24, 2007, according to Plaintiff, Defendants David ("David") and Masiel

15   ("Masiel") escorted him from the law library and returned him to the security housing unit (SHU)

16   where he was housed. (Doc. 50).  During the escort, David "pushed Plaintiff in a violent manner"

17   and made "verbal threats toward Plaintiff about what he would do to Plaintiff if Plaintiff

18   continued to pursue his lawsuit against Defendant Martinez ("Martinez"), David's supervisor."

19   (Doc. 7 at 7; Doc. 50 at 8).

20   When Plaintiff arrived at his cell, Plaintiff placed his hands through the tray slot to have

21   the handcuffs removed.  At that time, Masiel squeezed Plaintiff's arms and stated, "Fuck your

22   mother, your mother should of [sic] killed you during birth, you Black piece of shit [sic] if I get a

23   chance I'm going to kill your Black ass, you piece of shit."  (Doc. 7 at 7-8; Doc. 50 at 8).  David

24   then removed Plaintiff's handcuffs and "intentionally smashed the tray slot door on [his] right

25   hand."  (Doc. 7 at 7-8; Doc. 50 at 8).

26   David and Masiel have no recollection of escorting Plaintiff to or from the law library on

27   July 24, 2007 and do not believe they did so because neither of them recorded doing so on

28

1    Plaintiff's Inmate Segregation Record (CDC 114-A).[1]   (Doc. 44-2 at 2, ¶8; Doc. 44-4 at 2, ¶8).

2    Likewise, David and Masiel dispute that they used any force against Plaintiff on July 24, 2007, as

3    neither of them prepared an incident report regarding any force and both deny the conduct alleged

4    by Plaintiff.  (Doc. 44-2 at 2, ¶¶9-11; Doc. 44-4 at 2, ¶¶ 9-11).

5         At approximately 1:15 p.m., according to Defendants, David called Martinez and asked

6    him to come to Plaintiff's cell because Plaintiff had pulled the handcuffs into the cell.  (Doc. 44-3

7    at 2, ¶5).  Martinez was unable to persuade Plaintiff to allow staff to remove the handcuffs.  (Doc.

8    44-3 at 2, ¶10).  It was at that time the correctional staff noticed that a portion of the key to the

9    handcuffs had broken off and could not be located.  (Doc. 44-3 at 2, ¶11).  Plaintiff refused to

10   allow staff to attach a lanyard to the handcuffs so he could be taken out of his cell to search for

11   the missing portion of the handcuff key.  (Doc. 44-3 at 2, ¶¶11-14).  As staff was preparing to

12   proceed with a use of force to locate and secure the missing portion of the key, Plaintiff gave the

13   missing piece of the key to another officer.  (Doc. 44-3 at 2, ¶16).

14        Plaintiff denies pulling any handcuffs into his cell or refusing any orders given by staff on

15   July 24, 2007.  (Doc. 50 at 34, ¶6).  While Plaintiff acknowledges having contact with Martinez

16   upon his return to his cell; Plaintiff alleges only that Martinez arrived at his cell, attempted to

17   spray him with pepper spray, told Plaintiff he was lucky he (Martinez) had not been involved in

18   the escort, and denied Plaintiff's request for medical care for his injured hand.  (Doc. 50. at 8).

19        Martinez states that he called medical staff to evaluate Plaintiff's complaints of hand pain

20   and a nurse came to see Plaintiff on that day.  (Doc. 44-3 at 3, ¶18, at 4, ¶27).

21   **III.    DISCUSSION**

22        Defendants assert they are entitled to summary judgment because Masiel did not use any

23   excessive force against Plaintiff, Martinez responded to Plaintiff's complaints of hand pain,

24   Defendants did not retaliate against him, and Defendants are entitled to qualified immunity.

25   Plaintiff disagrees.

26

27        [1] According to David's and Masiel's declarations, if a SHU inmate, like Plaintiff, is
     escorted to the law library, prison regulations require that his time out of his cell is documented in the comments
     section of the CDC-114-A form.  (Doc. 44-2 at 2, ¶6; Doc. 44-4 at 2, ¶6).

28

4

1      **A.      Retaliation**

2      Prisoners have a constitutional right under the First Amendment to be free from retaliation

3  for participating in "protected speech activities." Pratt v. Rowland, 65 F.3d 802, 806 & n. 4 (9th

4  Cir.1995). To obtain summary judgment on a claim of retaliation, Defendants have the burden to

5  demonstrate that there are no genuine issues of fact supported by evidence as to at least one of the

6  essential elements of a retaliation claim and, as a result, the plaintiff cannot prevail on the claim.

7  Celotex, 477 U.S. at 323.   "[A] viable claim of First Amendment retaliation entails five basic

8  elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

9  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

10  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

11  correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005). An allegation of

12  retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to

13  support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003)

14      Defendants contend that they are entitled to summary judgment as to this cause of action

15  because there is no evidence that Defendants took any adverse action against Plaintiff.  (Doc. 44

16  at 10).   In other words, Defendants contend that there is no genuine issue of material fact

17  precluding summary judgment in their favor with respect to element one (adverse action) of

18  Plaintiff's First Amendment retaliation claims.

19      **1)      Masiel**

20      Plaintiff has presented evidence sufficient to establish each of the elements required for

21  his retaliation claim against Masiel.  Plaintiff's evidence demonstrates that he was engaged in a

22  protected activity—the lawsuit against Martinez—and that Masiel's actions in squeezing

23  Plaintiff's arms was an adverse action.  Plaintiff asserts further that Masiel's actions did not

24  advance any legitimate correctional goal and chilled Plaintiff's First Amendment rights.  (Doc. 50

25  at 23-25).   Thus, the question surrounds whether Plaintiff has set forth some evidence of a

26  retaliatory motive (element 2).

27      Plaintiff alleges that during an escort from the law library on July 24, 2007, Masiel began

28  to "provoke, harass, and taunt Plaintiff" about the lawsuit Plaintiff was pursuing against their

1    supervisor, Defendant Martinez, "and other co-workers." (Doc. 50 at 32). However, Plaintiff's

2    FAC only attributes these actions to David and not Masiel. (Doc. 7 at 8, ¶¶12-14). "The general

3    rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting

4    his prior deposition testimony." Nelson v. City of Davis (9th Cir. 2009) 571 F.3d 924, 927-28

5    (citing Radobenko v. Automated Equipment Corp., 520 F.2d 540 (9th Cir.1975) and explaining

6    the rule bars a plaintiff from creating a factual dispute with himself for the sole purpose of

7    arguing that summary judgment is inappropriate until the dispute is settled; *see also* Young v.

8    Washington (9th Cir. 2009) 336 Fed.Appx. 750, 751 (involving a pro se civil detaining who

9    alleged a §1983 action). Even attributing the provoking and harassing statements to David only,

10   the facts viewed in the light most favorable to Plaintiff are sufficient to infer a retaliatory motive

11   by Masiel. According to Plaintiff, Masiel was present while David was provoking him and

12   making the retaliatory comments. The timing of Masiel's action in squeezing Plaintiff's arms and

13   making derogatory remarks, along with his alleged acquiescence in David's conduct, is sufficient

14   to infer retaliatory conduct by Masiel. *See* Curtis v. Buckley (E.D. Cal., June 27, 2011) 2011 WL

15   2551369 (explaining that a causal connection can be inferred from the cumulative circumstances).

16          Defendants present the declarations of Masiel and David to support their claim of

17   judgment. Masiel denies he took any of the actions alleged by Plaintiff. Specifically, Masiel

18   asserts there is no evidence on Plaintiff's 114-A form that he took Plaintiff to the library on July

19   24, 2007 and he cannot recall doing so. (Doc. 44-2 at 2, ¶¶8-11; 44-4 at 2, ¶¶8-11). Additionally,

20   Masiel asserts there is no evidence of an incident report to demonstrate that David or Masiel used

21   force against Plaintiff on that day. (Doc. 44-2 at 2, ¶¶8-11; 44-4 at 2, ¶¶8-11). Although the

22   allegations of force against Masiel relate to the squeezing of Plaintiff's arms, Masiel only

23   specifically denies squeezing Plaintiff's "wrists."[2] (Doc. 44-4 at 3, ¶10). Because Masiel seems

24   to deny any involvement in the events alleged by Plaintiff—indeed, he seems to assert that he was

25   not even present during the incident--Masiel does not set forth any argument to show that his

26   [2] Masiel states he does not recall whether he escorted Plaintiff to the library that day. However, it is unclear whether
     Masiel's affirmative testimony that he "did not squeeze [Plaintiff's] wrists" is intended to show that Masiel does
27   recall being present when Plaintiff was placed in his cell. Additionally, Masiel has not denied that he squeezed
     Plaintiff's "arms," he has only denied squeezing Plaintiff's wrists.

28

1    actions were done for any legitimate correctional purpose. Defendants evidence is sparse but

2    sufficient to meet their burden of demonstrating an absence of material issue of fact as to

3    Plaintiff's retaliation claim against Masiel.

4           However, Plaintiff presents evidence in the form of declarations, verified pleadings, and

5    discovery documents, which disputes Defendants' account of the incident.[3]  Plaintiff declares that

6    he was present in the library on July 24, 2007 from 10:30 to 12:30 p.m. and that David and

7    Masiel were the officers who escorted him back to his cell afterward.  (Doc. 50 at 16 and 32; Doc.

8    51 at 3).  Plaintiff produces also a declaration from inmate Fields in which Fields states he recalls

9    seeing David escort Plaintiff back to Plaintiff's cell from an area near the library.  (Doc. 50 at 43,

10   ¶¶2-4).  Fields testifies that Masiel was escorting him (Fields) but that Masiel left him to go assist

11   David with Plaintiff.  (Doc. 50 at 43-44, ¶¶2-4).  Such evidence raises a genuine issue of material

12   fact regarding whether Masiel was involved in a portion of Plaintiff's escort to his cell on July 24,

13   2012, including the time when Plaintiff was placed in his cell.  Moreover, it raises an issue of fact

14   as to whether Masiel was present when David made the "provoking and taunting" statements to

15   Plaintiff and therefore, whether retaliatory motive can be inferred from Masiel's conduct.

16   Consequently, it is recommended that Defendants' motion for summary judgment against Masiel

17   on the issue of Retaliation be **DENIED**.

18                **2)**    **Martinez**

19          As explained above, Plaintiff has made a sufficient showing that he was engaged in a

20   protected activity, that Martinez refused his request for medical care for his hand, that Martinez'

21   actions in denying him medical treatment did not advance a correctional purpose, and that his

22   speech was chilled.  Again, the focus here is whether Plaintiff has shown that the adverse action

23   was taken because of Plaintiff's protected activity.  The Court finds that Plaintiff's allegations

24   about the comments made by Martinez when Martinez arrived at his cell, the timing of the events,

25

26   [3] Because Plaintiff is proceeding pro se in this action, the Court considers as evidence in his opposition to summary
     judgment all of his contentions offered in motions and pleadings where (1) his contentions are based on personal
27   knowledge and set forth facts that would be admissible in evidence; and (2) he attested under penalty of perjury that
     the contents of his motions and pleadings are true and correct.  *See* Jones v. Blanas, 393 F.3d 918, 923 (9th Cir.
     2004).]

28

1    and Martinez' knowledge of the lawsuit pending against him by Plaintiff are sufficient to infer a

2    retaliatory motive.

3         Martinez presented evidence to show that when Plaintiff complained of hand pain,

4    Martinez obtained medical assistance for him.  (Doc. 44-3 at 3, ¶18).  Martinez attests that Nurse

5    Price evaluated Plaintiff's hand and medically cleared him.  (Doc. 44-3 at 3, ¶¶17-19; Doc. 44-3

6    at 7).  Plaintiff's declaration, on the other hand, disputes that he was seen by any medical

7    professional and claims that he sustained permanent injury to his thumb.  (Doc. 7 at 9, ¶¶19-20).

8         Defendants would have this Court find that Martinez' version of the events is more

9    credible than Plaintiff's; indeed, a jury may so find. However, the Supreme Court explained that

10   summary judgment does not authorize "trial on affidavits." Anderson, 477 U.S. at 225. In

11   resolving a motion for summary judgment, "the court does not make credibility determinations or

12   weigh conflicting evidence." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir.

13   2007); *see also* Anderson, 477 U.S. at 225 (finding "[c]redibility determinations, the weighing of

14   evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

15   judge . . . ruling on a motion for summary judgment"). Rather, "the evidence of the nonmovant is

16   to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at

17   255.  As a result, it is recommended that Defendants motion for summary judgment on Plaintiff's

18   claims against Martinez for retaliation be **DENIED**.

19       **B.**     **Eighth Amendment Claims**

20            **1)**     **Excessive Force by Masiel**

21       When a prison official uses excessive force against a prisoner, he violates the inmate's

22   Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298

23   F.3d 898, 903 (9th Cir.2002). "Force does not amount to a constitutional violation in this respect

24   if it is applied in a good faith effort to restore discipline and order and not 'maliciously and

25   sadistically for the very purpose of causing harm.'" Id. (*quoting* Whitley v. Albers, 475 U.S. 312,

26   320-21 (1986)). To make this determination, the Court may evaluate "the need for application of

27   force, the relationship between that need and the amount of force used, the threat 'reasonably

28   perceived by the responsible officials,' . . . 'any efforts made to temper the severity of a forceful

1    response'" and the extent of any injury inflicted. Hudson v. McMillian, 503 U.S. 1, 7 (1992).

2        Defendants assert that Masiel is entitled to summary judgment because Plaintiff has not

3    shown that he sustained any injury as a result of Masiel squeezing his arms. Defendants are

4    correct that Plaintiff has not claimed any injury to his "arms" as a result of Masiel's alleged

5    actions; however, Defendants are incorrect in requiring Plaintiff to produce "evidence of an

6    injury" to defeat Defendants' motion.  Rather, the malicious and sadistic use of force by prison

7    officials always violates contemporary standards of decency (Hudson v. McMillian, 503 U.S. 1, 9

8    (1986)), even where there is no visible physical injury resulting. Oliver v. Keller, 289 F.3d 623,

9    628 (9th Cir. 2002) (excessive force standard examines de minimis uses of force, not de minimus

10   injuries).[4]

11       The Court cannot review the medical charting submitted by Defendants and determine the

12   amount of force used.  The injuries that would be expected from the force described by Plaintiff,

13   if any, are unknown to the Court. Moreover, it is unknown whether all of the injuries would have

14   been apparent by visual inspection immediately after the event. Finally, though the medical

15   records seem to demonstrate that Plaintiff did not complain about hand pain after the event --as he

16   claims here—some of the writing on the medical record is indecipherable and Defendants have

17   failed to provide a declaration explaining the information which is recorded in them.[5] (Doc. 44-5).

18   Thus, there is a genuine dispute of material fact and it is recommended that Defendants motion

19   for summary judgment as to the excessive force claim against Masiel be **DENIED**. *See* Celotex,

20   477 U.S. at 323.

21              **2)**      **Deliberate Indifference to Medical Care by Martinez**

22       To establish a violation of the Eighth Amendment based on inadequate medical care, a

23   plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate

24   indifference to serious medical needs."   Estelle v. Gamble, 429 U.S. 97, 106 (1976).   In other

25   _____

26       [4] On the other hand, Plaintiff claims permanent injury to his thumb as a result of this incident. (Doc. 7 at 9,
     ¶¶19-20).
         [5] Moreover, Defendants have not explained why, if the entire medical chart for the relevant period has been
27   produced here, the evaluation conducted by LVN Price on July 24, 2007,  is not contained in the set of records
     produced.

28

1    words, the plaintiff must show the existence of (1) a serious medical need and (2) a deliberately

2    indifferent response by the defendant.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

3           A medical need is serious "if the failure to treat the condition could result in further

4    significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974

5    F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104

6    F.3d 1133 (9th Cir. 1997).  Indications that a person has a serious need for medical treatment

7    include: the existence of an injury that a reasonable doctor or patient would find worthy of

8    comment or treatment; the presence of a medical condition that significantly affects an

9    individual's daily activities; or the existence of chronic and substantial pain.  McGuckin, 974 F.2d

10   at 1059-60 (citations omitted).

11          A defendant acts with deliberate indifference when he knowingly fails to respond to a

12   serious medical need, thereby inflicting harm on the plaintiff.  See Farmer v. Brennan, 511 U.S.

13   825, 837-42 (1994); Jett, 439 F.3d at 1096.  Deliberate indifference may appear when a defendant

14   denies, delays, or otherwise interferes with medical treatment.  See Hutchinson v. United States,

15   838 F.2d 390, 394 (9th Cir. 1988).  Nevertheless, "[d]eliberate indifference is a high legal

16   standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Mere 'indifference,'

17   'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter

18   Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  A difference

19   in opinion between a physician and his patient over the best course of treatment is also

20   insufficient to demonstrate deliberate indifference.  See Jackson v. McIntosh, 90 F.3d 330, 332

21   (9th Cir. 1996).

22          Here, Defendants have produced the declaration of Martinez and the custodian of medical

23   records.  (Doc. 44-3 and 44-5).  Martinez testifies that when Plaintiff complained of hand pain,

24   Martinez obtained medical assistance for him.  (Doc. 44-3 at 3, ¶18).  Martinez states that Nurse

25   Price evaluated Plaintiff's hand and medically cleared him.  (Doc. 44-3 at 3, ¶¶17-19; Doc. 44-3

26   at 7).  Plaintiff's declaration, on the other hand, disputes that he was seen by any medical

27   professional and claims that he sustained permanent injury to his thumb.  (Doc. 7 at 9, ¶¶19-20;

28   Doc. 50 at 35, ¶10).  Because the parties have set forth two versions of the events that occurred on

1    July 24, 2007, a fact finder must determine which version of events to believe.  T.W. Electrical

2    Serv., Inc., 809 F.2d at 630.  Given the factual disputes, it is recommended that Defendants'

3    motion for summary judgment regarding the medical indifference claim against Martinez be

4    **DENIED**.

5             **C.    Qualified Immunity**

6             Qualified immunity protects government officials from "liability for civil damages insofar

7    as their conduct does not violate clearly established statutory or constitutional rights of which a

8    reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

9    Qualified immunity "balances two important interests – the need to hold public officials

10   accountable when they exercise power irresponsibly and the need to shield officials from

11   harassment, distraction, and liability when they perform their duties reasonably." Pearson v.

12   Callahan, 555 U.S. 223, 231 (2009).

13            The threshold inquiry is whether the facts alleged, when taken in the light most favorable

14   to the plaintiff, show the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194,

15   201 (2001). If there is a constitutional violation, "the next sequential step is to ask whether the

16   right was clearly established." Id. Finally, the right must be so "clearly established" that "a

17   reasonable official would understand that what he is doing violates that right."  Id. at 202; *see*

18   *also* McDade v. West, 223 F.3d 1135, 1142 (9th Cir. 2000) ("The test for qualified immunity is:

19   (1) identification of the specific right being violated; (2) determination of whether the right was

20   so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a

21   determination of whether a reasonable officer would have believed that the policy or decision in

22   question was lawful").

23            Defendants argue they are entitled to qualified immunity because they did not violate

24   Plaintiff's constitutional rights or, alternatively, Defendants believed their conduct to be lawful.

25   (Doc. 44 at 11).  However, as explained above, the facts viewed in the light most favorable to

26   Plaintiff demonstrate a violation of the Eighth Amendment and First Amendment. Defendants

27   acknowledge that it is well established that a prison official cannot use excessive force, retaliate

28   against an inmate for exercising a protected activity, or ignore an inmate's medical needs.  (Doc.

1   44 at 11).  Given the factual disputes set forth here by both parties, the Court cannot determine

2   the actions that any of the Defendants took on July 24, 2007.  Based upon the record before this

3   Court, it is recommended that qualified immunity not apply to Defendants' action at this time.

4   **IV.      RECOMMENDATION**

5           Based on the foregoing, the Court recommends,

6           1.      The motion for summary judgment filed by defendant David be **DENIED**;

7           2.      The motion for summary judgment filed by Masiel be **DENIED**; and,

8           3.      The motion for summary judgment filed by defendant Martinez be **DENIED**.

9           These Findings and Recommendations are submitted to the United States District Judge

10  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

11  Local Rules of Practice for the United States District Court, Eastern District of California.  Within

12  14 days after being served with a copy, any party may file written objections with the Court and

13  serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

14  Judge's Findings and Recommendations."   Replies to the objections shall be filed within fourteen

15  days after service of the objections. The District Judge will then review the Magistrate Judge's

16  ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Failure to file objections within the specified time

17  may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

18  Cir. 1991).

19
    IT IS SO ORDERED.
20

21      Dated:   **September 6, 2012**                    **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28