IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. JACOBS, IV,<br><br>Plaintiff,<br><br>v.<br><br>JEANNE WOODFORD, ET AL.,<br><br>Defendants. | Case No. 1:08-cv-00369-AWI-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 44). |

Plaintiff George E. Jacobs IV, ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his initial complaint in this matter on March 14, 2008. (Doc. 1). After the Court's initial screening of the complaint, Plaintiff was given an opportunity to amend the complaint. Plaintiff's First Amended Complaint ("FAC") is the operative pleading. (Doc. 7, 9, 12). Plaintiff's FAC alleges the following causes of action: 1) Retaliation against Defendants David, Masiel, and Martinez; 2) Excessive Force against David and Masiel; and 3) Deliberate Indifference to Medical Need against Martinez. (Doc. 7).

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 44). Plaintiff filed his Opposition on July 2, 2012. (Doc. 50) and Defendants have replied. (Doc. 52). On July 11, 2012, Defendants served Plaintiff with notice, as required by Woods v. Carey (9th Cir. 2012)

684 F.3d 934.  Plaintiff responded to the notice, indicated that he believed his initial Opposition was sufficient, and asked the Court to decide the matter based on the Opposition he filed on July 2, 2012.  (Doc. 54).

Defendants Reply concedes, for purposes of this motion alone, that Plaintiff has presented sufficient evidence to establish a genuine issue of material fact with regard to Plaintiff's First and Eighth Amendment claims for retaliation and excessive force against David, respectively.  (Doc. 52).  Given this concession, the Court limits its discussion to Plaintiff's Retaliation claims against Masiel and Martinez, his excessive force claim against Masiel, and his deliberate indifference to medical need claim against Martinez.  After reviewing the arguments and evidence presented by both parties, it is recommended that Defendants' motion be **DENIED**.

**I.     SUMMARY JUDGMENT STANDARDS**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (internal quotation marks omitted).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 587. The party is required to tender evidence specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. Id. at 586 n.11; Fed. R. Civ. P. 56(c). In addition, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

## II.     FACTUAL BACKGROUND

On July 24, 2007, according to Plaintiff, Defendants David ("David") and Masiel ("Masiel") escorted him from the law library and returned him to the security housing unit (SHU) where he was housed. (Doc. 50). During the escort, David "pushed Plaintiff in a violent manner" and made "verbal threats toward Plaintiff about what he would do to Plaintiff if Plaintiff continued to pursue his lawsuit against Defendant Martinez ("Martinez"), David's supervisor." (Doc. 7 at 7; Doc. 50 at 8).

When Plaintiff arrived at his cell, Plaintiff placed his hands through the tray slot to have the handcuffs removed.  At that time, Masiel squeezed Plaintiff's arms and stated, "Fuck your mother, your mother should of [sic] killed you during birth, you Black piece of shit [sic] if I get a chance I'm going to kill your Black ass, you piece of shit."  (Doc. 7 at 7-8; Doc. 50 at 8).  David then removed Plaintiff's handcuffs and "intentionally smashed the tray slot door on [his] right hand." (Doc. 7 at 7-8; Doc. 50 at 8).

David and Masiel have no recollection of escorting Plaintiff to or from the law library on July 24, 2007 and do not believe they did so because neither of them recorded doing so on

Plaintiff's Inmate Segregation Record (CDC 114-A).[1]  (Doc. 44-2 at 2, ¶8; Doc. 44-4 at 2, ¶8). Likewise, David and Masiel dispute that they used any force against Plaintiff on July 24, 2007, as neither of them prepared an incident report regarding any force and both deny the conduct alleged by Plaintiff.  (Doc. 44-2 at 2, ¶¶9-11; Doc. 44-4 at 2, ¶¶ 9-11).

At approximately 1:15 p.m., according to Defendants, David called Martinez and asked him to come to Plaintiff's cell because Plaintiff had pulled the handcuffs into the cell.  (Doc. 44-3 at 2, ¶5).  Martinez was unable to persuade Plaintiff to allow staff to remove the handcuffs. (Doc. 44-3 at 2, ¶10).  It was at that time the correctional staff noticed that a portion of the key to the handcuffs had broken off and could not be located.  (Doc. 44-3 at 2, ¶11).  Plaintiff refused to allow staff to attach a lanyard to the handcuffs so he could be taken out of his cell to search for the missing portion of the handcuff key.  (Doc. 44-3 at 2, ¶¶11-14).  As staff was preparing to proceed with a use of force to locate and secure the missing portion of the key, Plaintiff gave the missing piece of the key to another officer.  (Doc. 44-3 at 2, ¶16).

Plaintiff denies pulling any handcuffs into his cell or refusing any orders given by staff on July 24, 2007.  (Doc. 50 at 34, ¶6).  While Plaintiff acknowledges having contact with Martinez upon his return to his cell; Plaintiff alleges only that Martinez arrived at his cell, attempted to spray him with pepper spray, told Plaintiff he was lucky he (Martinez) had not been involved in the escort, and denied Plaintiff's request for medical care for his injured hand.  (Doc. 50. at 8).

Martinez states that he called medical staff to evaluate Plaintiff's complaints of hand pain and a nurse came to see Plaintiff on that day.  (Doc. 44-3 at 3, ¶18, at 4, ¶27).

**III.   DISCUSSION**

Defendants assert they are entitled to summary judgment because Masiel did not use any excessive force against Plaintiff, Martinez responded to Plaintiff's complaints of hand pain, Defendants did not retaliate against him, and Defendants are entitled to qualified immunity. Plaintiff disagrees.

---

[1] According to David's and Masiel's declarations, if a SHU inmate, like Plaintiff, is escorted to the law library, prison regulations require that his time out of his cell is documented in the comments section of the CDC-114-A form. (Doc. 44-2 at 2, ¶6; Doc. 44-4 at 2, ¶6).

4

A. **<u>Retaliation</u>**

Prisoners have a constitutional right under the First Amendment to be free from retaliation for participating in "protected speech activities." <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 & n. 4 (9th Cir.1995). To obtain summary judgment on a claim of retaliation, Defendants have the burden to demonstrate that there are no genuine issues of fact supported by evidence as to at least one of the essential elements of a retaliation claim and, as a result, the plaintiff cannot prevail on the claim. <u>Celotex</u>, 477 U.S. at 323. "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir.2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir.2003)

Defendants contend that they are entitled to summary judgment as to this cause of action because there is no evidence that Defendants took any adverse action against Plaintiff. (Doc. 44 at 10). In other words, Defendants contend that there is no genuine issue of material fact precluding summary judgment in their favor with respect to element one (adverse action) of Plaintiff's First Amendment retaliation claims.

    **1)**    **Masiel**

Plaintiff has presented evidence sufficient to establish each of the elements required for his retaliation claim against Masiel. Plaintiff's evidence demonstrates that he was engaged in a protected activity—the lawsuit against Martinez—and that Masiel's actions in squeezing Plaintiff's arms was an adverse action. Plaintiff asserts further that Masiel's actions did not advance any legitimate correctional goal and chilled Plaintiff's First Amendment rights. (Doc. 50 at 23-25). Thus, the question surrounds whether Plaintiff has set forth some evidence of a retaliatory motive (element 2).

Plaintiff alleges that during an escort from the law library on July 24, 2007, Masiel began to "provoke, harass, and taunt Plaintiff" about the lawsuit Plaintiff was pursuing against their

1  supervisor, Defendant Martinez, "and other co-workers." (Doc. 50 at 32). However, Plaintiff's
2  FAC only attributes these actions to David and not Masiel. (Doc. 7 at 8, ¶¶12-14). "The general
3  rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting
4  his prior deposition testimony." Nelson v. City of Davis (9th Cir. 2009) 571 F.3d 924, 927-28
5  (citing Radobenko v. Automated Equipment Corp., 520 F.2d 540 (9th Cir.1975) and explaining
6  the rule bars a plaintiff from creating a factual dispute with himself for the sole purpose of
7  arguing that summary judgment is inappropriate until the dispute is settled; *see also* Young v.
8  Washington (9th Cir. 2009) 336 Fed.Appx. 750, 751 (involving a pro se civil detaining who
9  alleged a §1983 action). Even attributing the provoking and harassing statements to David only,
10 the facts viewed in the light most favorable to Plaintiff are sufficient to infer a retaliatory motive
11 by Masiel. According to Plaintiff, Masiel was present while David was provoking him and
12 making the retaliatory comments. The timing of Masiel's action in squeezing Plaintiff's arms and
13 making derogatory remarks, along with his alleged acquiescence in David's conduct, is sufficient
14 to infer retaliatory conduct by Masiel. *See* Curtis v. Buckley (E.D. Cal., June 27, 2011) 2011 WL
15 2551369 (explaining that a causal connection can be inferred from the cumulative circumstances).

16  Defendants present the declarations of Masiel and David to support their claim of
17 judgment. Masiel denies he took any of the actions alleged by Plaintiff. Specifically, Masiel
18 asserts there is no evidence on Plaintiff's 114-A form that he took Plaintiff to the library on July
19 24, 2007 and he cannot recall doing so. (Doc. 44-2 at 2, ¶¶8-11; 44-4 at 2, ¶¶8-11). Additionally,
20 Masiel asserts there is no evidence of an incident report to demonstrate that David or Masiel used
21 force against Plaintiff on that day. (Doc. 44-2 at 2, ¶¶8-11; 44-4 at 2, ¶¶8-11). Although the
22 allegations of force against Masiel relate to the squeezing of Plaintiff's arms, Masiel only
23 specifically denies squeezing Plaintiff's "wrists."[2] (Doc. 44-4 at 3, ¶10). Because Masiel seems
24 to deny any involvement in the events alleged by Plaintiff—indeed, he seems to assert that he was
25 not even present during the incident--Masiel does not set forth any argument to show that his

---

[2] Masiel states he does not recall whether he escorted Plaintiff to the library that day. However, it is unclear whether Masiel's affirmative testimony that he "did not squeeze [Plaintiff's] wrists" is intended to show that Masiel does recall being present when Plaintiff was placed in his cell. Additionally, Masiel has not denied that he squeezed Plaintiff's "arms," he has only denied squeezing Plaintiff's wrists.

actions were done for any legitimate correctional purpose. Defendants evidence is sparse but sufficient to meet their burden of demonstrating an absence of material issue of fact as to Plaintiff's retaliation claim against Masiel.

However, Plaintiff presents evidence in the form of declarations, verified pleadings, and discovery documents, which disputes Defendants' account of the incident.[3] Plaintiff declares that he was present in the library on July 24, 2007 from 10:30 to 12:30 p.m. and that David and Masiel were the officers who escorted him back to his cell afterward. (Doc. 50 at 16 and 32; Doc. 51 at 3). Plaintiff produces also a declaration from inmate Fields in which Fields states he recalls seeing David escort Plaintiff back to Plaintiff's cell from an area near the library. (Doc. 50 at 43, ¶¶2-4). Fields testifies that Masiel was escorting him (Fields) but that Masiel left him to go assist David with Plaintiff. (Doc. 50 at 43-44, ¶¶2-4). Such evidence raises a genuine issue of material fact regarding whether Masiel was involved in a portion of Plaintiff's escort to his cell on July 24, 2012, including the time when Plaintiff was placed in his cell. Moreover, it raises an issue of fact as to whether Masiel was present when David made the "provoking and taunting" statements to Plaintiff and therefore, whether retaliatory motive can be inferred from Masiel's conduct. Consequently, it is recommended that Defendants' motion for summary judgment against Masiel on the issue of Retaliation be **DENIED**.

### 2) Martinez

As explained above, Plaintiff has made a sufficient showing that he was engaged in a protected activity, that Martinez refused his request for medical care for his hand, that Martinez' actions in denying him medical treatment did not advance a correctional purpose, and that his speech was chilled. Again, the focus here is whether Plaintiff has shown that the adverse action was taken because of Plaintiff's protected activity. The Court finds that Plaintiff's allegations about the comments made by Martinez when Martinez arrived at his cell, the timing of the events,

---

[3] Because Plaintiff is proceeding pro se in this action, the Court considers as evidence in his opposition to summary judgment all of his contentions offered in motions and pleadings where (1) his contentions are based on personal knowledge and set forth facts that would be admissible in evidence; and (2) he attested under penalty of perjury that the contents of his motions and pleadings are true and correct. *See* Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).]

and Martinez' knowledge of the lawsuit pending against him by Plaintiff are sufficient to infer a retaliatory motive.

Martinez presented evidence to show that when Plaintiff complained of hand pain, Martinez obtained medical assistance for him. (Doc. 44-3 at 3, ¶18). Martinez attests that Nurse Price evaluated Plaintiff's hand and medically cleared him. (Doc. 44-3 at 3, ¶¶17-19; Doc. 44-3 at 7). Plaintiff's declaration, on the other hand, disputes that he was seen by any medical professional and claims that he sustained permanent injury to his thumb. (Doc. 7 at 9, ¶¶19-20).

Defendants would have this Court find that Martinez' version of the events is more credible than Plaintiff's; indeed, a jury may so find. However, the Supreme Court explained that summary judgment does not authorize "trial on affidavits." Anderson, 477 U.S. at 225. In resolving a motion for summary judgment, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007); *see also* Anderson, 477 U.S. at 225 (finding "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment"). Rather, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. As a result, it is recommended that Defendants motion for summary judgment on Plaintiff's claims against Martinez for retaliation be **DENIED**.

### B. Eighth Amendment Claims

#### 1) Excessive Force by Masiel

When a prison official uses excessive force against a prisoner, he violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir.2002). "Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" Id. (*quoting* Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). To make this determination, the Court may evaluate "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' . . . 'any efforts made to temper the severity of a forceful

1 response'" and the extent of any injury inflicted. Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Defendants assert that Masiel is entitled to summary judgment because Plaintiff has not shown that he sustained any injury as a result of Masiel squeezing his arms. Defendants are correct that Plaintiff has not claimed any injury to his "arms" as a result of Masiel's alleged actions; however, Defendants are incorrect in requiring Plaintiff to produce "evidence of an injury" to defeat Defendants' motion. Rather, the malicious and sadistic use of force by prison officials always violates contemporary standards of decency (Hudson v. McMillian, 503 U.S. 1, 9 (1986)), even where there is no visible physical injury resulting. Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (excessive force standard examines de minimis uses of force, not de minimus injuries).[4]

The Court cannot review the medical charting submitted by Defendants and determine the amount of force used. The injuries that would be expected from the force described by Plaintiff, if any, are unknown to the Court. Moreover, it is unknown whether all of the injuries would have been apparent by visual inspection immediately after the event. Finally, though the medical records seem to demonstrate that Plaintiff did not complain about hand pain after the event --as he claims here—some of the writing on the medical record is indecipherable and Defendants have failed to provide a declaration explaining the information which is recorded in them.[5] (Doc. 44-5). Thus, there is a genuine dispute of material fact and it is recommended that Defendants motion for summary judgment as to the excessive force claim against Masiel be **DENIED**. *See* Celotex, 477 U.S. at 323.

**2)   Deliberate Indifference to Medical Care by Martinez**

To establish a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In other

---

[4] On the other hand, Plaintiff claims permanent injury to his thumb as a result of this incident. (Doc. 7 at 9, ¶¶19-20).

[5] Moreover, Defendants have not explained why, if the entire medical chart for the relevant period has been produced here, the evaluation conducted by LVN Price on July 24, 2007, is not contained in the set of records produced.

1 words, the plaintiff must show the existence of (1) a serious medical need and (2) a deliberately
2 indifferent response by the defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

3 A medical need is serious "if the failure to treat the condition could result in further
4 significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974
5 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104
6 F.3d 1133 (9th Cir. 1997). Indications that a person has a serious need for medical treatment
7 include: the existence of an injury that a reasonable doctor or patient would find worthy of
8 comment or treatment; the presence of a medical condition that significantly affects an
9 individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d
10 at 1059-60 (citations omitted).

11 A defendant acts with deliberate indifference when he knowingly fails to respond to a
12 serious medical need, thereby inflicting harm on the plaintiff. See Farmer v. Brennan, 511 U.S.
13 825, 837-42 (1994); Jett, 439 F.3d at 1096. Deliberate indifference may appear when a defendant
14 denies, delays, or otherwise interferes with medical treatment. See Hutchinson v. United States,
15 838 F.2d 390, 394 (9th Cir. 1988). Nevertheless, "[d]eliberate indifference is a high legal
16 standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,'
17 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter
18 Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). A difference
19 in opinion between a physician and his patient over the best course of treatment is also
20 insufficient to demonstrate deliberate indifference. See Jackson v. McIntosh, 90 F.3d 330, 332
21 (9th Cir. 1996).

22 Here, Defendants have produced the declaration of Martinez and the custodian of medical
23 records. (Doc. 44-3 and 44-5). Martinez testifies that when Plaintiff complained of hand pain,
24 Martinez obtained medical assistance for him. (Doc. 44-3 at 3, ¶18). Martinez states that Nurse
25 Price evaluated Plaintiff's hand and medically cleared him. (Doc. 44-3 at 3, ¶¶17-19; Doc. 44-3
26 at 7). Plaintiff's declaration, on the other hand, disputes that he was seen by any medical
27 professional and claims that he sustained permanent injury to his thumb. (Doc. 7 at 9, ¶¶19-20;
28 Doc. 50 at 35, ¶10). Because the parties have set forth two versions of the events that occurred on

July 24, 2007, a fact finder must determine which version of events to believe. T.W. Electrical Serv., Inc., 809 F.2d at 630. Given the factual disputes, it is recommended that Defendants' motion for summary judgment regarding the medical indifference claim against Martinez be **DENIED**.

### C. Qualified Immunity

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

The threshold inquiry is whether the facts alleged, when taken in the light most favorable to the plaintiff, show the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If there is a constitutional violation, "the next sequential step is to ask whether the right was clearly established." Id. Finally, the right must be so "clearly established" that "a reasonable official would understand that what he is doing violates that right." Id. at 202; *see also* McDade v. West, 223 F.3d 1135, 1142 (9th Cir. 2000) ("The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful").

Defendants argue they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights or, alternatively, Defendants believed their conduct to be lawful. (Doc. 44 at 11). However, as explained above, the facts viewed in the light most favorable to Plaintiff demonstrate a violation of the Eighth Amendment and First Amendment. Defendants acknowledge that it is well established that a prison official cannot use excessive force, retaliate against an inmate for exercising a protected activity, or ignore an inmate's medical needs. (Doc.

44 at 11). Given the factual disputes set forth here by both parties, the Court cannot determine the actions that any of the Defendants took on July 24, 2007. Based upon the record before this Court, it is recommended that qualified immunity not apply to Defendants' action at this time.

## IV.   RECOMMENDATION

Based on the foregoing, the Court recommends,

1. The motion for summary judgment filed by defendant David be **DENIED**;

2. The motion for summary judgment filed by Masiel be **DENIED**; and,

3. The motion for summary judgment filed by defendant Martinez be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be filed within fourteen days after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 6, 2012**              /s/ Jennifer L. Thurston
                                                                   UNITED STATES MAGISTRATE JUDGE